## Missouri Malleable Iron Works v. Julius F. Rivers Architectural Co.

1. DAMAGES—*When Excessive.*—A person contracted to perform certain work for $1,500. As the work progressed he was paid $500, leaving due him $1,000, had he completed the work. He was discharged, however, before its completion, and brought a suit in which he recovered $2,250. *Held*, the damages were excessive.

Assumpsit, on a breach of contract. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

### STATEMENT OF THE CASE.

This action in assumpsit by appellee against appellant was brought to recover upon the following bill of particulars:

" Missouri Malleable Iron Co. to Julius F. Rivers Architectural Company, Dr.

1891—Apr. 20th to May 4th—To making sketches and plans for trusses to span the foundry in annealing buildings of defendant in East St. Louis................................................ $ 438.27

1891—May 6th to Sept. 9th—To drawing plans, details and specifications for the main and additional buildings of defendant's plans and surveys, and giving levels for said buildings, superintending the construction thereof..... 6,000.00

1891—May 6th to September 9th—To making specified estimates of the costs of the different works on and in the said several buildings of defendant at its request..................

Total...................$7,701.95"

The jury returned a verdict for plaintiff for $2,250, and judgment was entered for that amount and costs, and the defendant took this appeal, and asks that the judgment be reversed. The jury were required to return special findings upon the following interrogatories:

" 1st. Did the plaintiff submit a proposition to the defendant on or about May 6, 1891, by which proposition he agreed to do and perform certain kinds of work therein specified for the defendant for the sum of $1,500 ?" to which the jury answered " Yes."

" 2d. Did the defendant, on or about May 8, 1891, accept the proposition whereby the plaintiff proposed to do certain work for the defendant for the sum of $1,500, and did defendant notify plaintiff of such acceptance ?" to which the jury answered " Yes."

" 3d. Did the plaintiff and the defendant have a contract by which plaintiff was to do and perform certain work for the defendant, such as architectural, and superintending and supervising work, etc., for the sum of $1,500 ?" to which the jury answered " Yes."

The following is the proposition so made and accepted, and contract entered into, as found by the jury:

"EAST ST. LOUIS, ILL., May 6, 1891.
Missouri Malleable Iron Company, St. Louis, Mo.

GENTLEMEN: We propose to furnish for the contemplated building in East St. Louis, Ill., the drawings, tracings, blueprints and detail drawings and specifications needed for and in the construction and completion of the buildings.

To aid in taking sealed proposals for the contracts and submit same for your approval.

To lay out after block plans all the buildings.

To give levels for all foundations and walls.

To give report of work and materials.

To estimate the amount of work from time to time for payment, and give orders for same.

To superintend the buildings and do all the architect's duties for the sum of fifteen hundred dollars ($1,500).

This does not include any contract work.

Most respectfully,<br>
RIVERS ARCHITECTURAL Co.,<br>
By JUL. F. RIVERS."

COCKRELL & MOYERS, attorneys for appellant.

A. FLANNIGEN & M. MILLARD, attorneys for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

The evidence in this case shows that the written proposition mentioned in the statement of the case was made to appellant by the appellee and was accepted by the former, and became the contract under which the work was done by appellee. He denied the making and acceptance of this contract, but the preponderance of the evidence and the special findings of the jury contradict him. It is insisted on behalf of appellee that appellant rescinded the contract by wrongfully discharging him before the completion of the work, and that there was such a change of plans upon which said proposition was based that it amounted to an abandonment of the contract and entitled appellee to recover what his services were reasonably worth. His acts indicate

he did not claim the plans were so changed as to increase his work, or change the contract. He gave no notice of such claim, or that he was operating outside the contract, and asked for and received $500 in two installments, as one-third of the price he was to receive, which, by the contract, was to be $1,500. He was discharged before the completion of the plant, for the reason he failed to furnish the necessary details and specifications for the proper completion of the buildings, and had failed to give assistance in superintending the erection of the same, necessitating the hiring of a superintendent to perform the duties he had contracted to perform; and we think the evidence tends strongly to establish his delinquency in all these respects. The damages assessed, in our judgment, were excessive, in view of all the evidence. If he had completed his entire contract he was entitled to $1,500. He had received $500 of this sum, leaving but $1,000 then due him, yet the jury assessed more than double that sum, $2,250, as the reasonable value of his work and labor, basing their finding, doubtless, on the testimony of appellee and the two architects testifying in his behalf, and probably allowing his claim of $438.27, for work done before the acceptance of said proposition. The estimate of appellee as to the value of his services is predicated upon his full performance of his duties as an architect and in superintending the building, and the preponderance of the evidence as to such performance, furnished by his own admissions and the testimony of at least four witnesses having means of knowledge, is against his version; and the two architects evidently give their estimate with the understanding that an architect had fully performed his duties, and not with the understanding he had failed to do so. Reluctant as we are to disturb verdicts, we feel it to be our duty to do so in this case, believing the damages assessed are excessive when the whole evidence is considered. The judgment is reversed and the cause remanded.